**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

GENEDICS, LLC,                                                 )
                                                              )   C.A. No. 17-1062-CJB
                        Plaintiff,                            )
                                                              )   **JURY TRIAL DEMANDED**
            v.                                                )
                                                              )   **PUBLIC VERSION**
META COMPANY,                                                 )
                                                              )
                        Defendant.                            )

**DEFENDANT META COMPANY'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO TRANSFER
<u>TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

OF COUNSEL:

Michael C. Ting
Craig Kaufman
Fatima Alloo
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood City, CA  94612
Tel:  (650) 517-5200

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
obyrne@potteranderson.com

*Attorneys for Defendant Meta Company*

Dated:  September 28, 2017
5416363 / 44402
Public Version Dated: October 5, 2017

## TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS ............................................................... 1

II.     SUMMARY OF ARGUMENT ................................................................................ 1

III.    STATEMENT OF FACTS ...................................................................................... 3

     A.      Meta is a Start-Up Company Headquartered In San Mateo, California with
            Limited Resources. ................................................................................................. 3

     B.      Genedics Has No Presence in Delaware, but Does Have A Presence in
            California ................................................................................................................ 5

     C.      Relevant Third Party Witnesses Also Reside In California. ................................. 6

IV.     ARGUMENT ...................................................................................................... 7

     A.      Genedics could have brought this case in the Northern District of
            California ................................................................................................................ 7

     B.      The Jumara Factors Strongly Favor Transfer to the Northern District of
            California ................................................................................................................ 8

          1.      The "private interest" Jumara factors strongly weigh in favor of
               transfer to the Northern District of California ........................................... 9

               a.      Factor 1: Genedics' choice of forum should be disregarded
                    because Genedics has no connection to the State of
                    Delaware and because the other Jumara factors weigh
                    strongly in favor of transfer ........................................................ 9

               b.      Factor 2: Meta's Choice of Forum supports transfer
                    because the majority of relevant witnesses and information
                    are in The Northern District of California ................................... 9

               c.      Factor 3: Transfer is supported because the underlying
                    dispute arose in the Northern District of California, not in
                    Delaware ...................................................................................... 10

               d.      Factor 4: Transfer to the Northern District of California is
                    more convenient for the Parties .................................................. 11

                e.      Factor 5: This case should be transferred because the
                    Northern District of California is more convenient for
                    witnesses ..................................................................................... 13

               f.      Factor 6: Records and books that are relevant to this case
                    are located in the Northern District of California ....................... 14

          2.      Application of the Jumara public factors also favor transfer to the
                Northern District of California. ................................................................ 15

                a.      Factor 7: Enforceability of the Judgment is neutral as a
                    judgment in either Delaware or The Northern District of
                    California can be enforced. ......................................................... 15

|   | b. | Factor 8: Practical considerations that could make the trial easy, expeditions or inexpensive weigh in favor of transfer........ 15 |
|---|----|--------|
|   | c. | Factor 9: Transfer is warranted due to administrative difficulties that may hinder in expeditiously bringing the case to trial in Delaware............................................................... 16 |
|   | d. | Factor 10: Transfer is warranted because the Northern District of California has a strong interest in deciding a controversy that impacts a local company. .................................. 17 |
|   | e. | Factor 11: Public Policy of the fora are neutral; ........................ 17 |
|   | f. | Factor 12 does not apply as this is not a diversity case .............. 18 |
| V. | CONCLUSION.......................................................................................... 18 |  |

## TABLE OF AUTHORITIES

### CASES

*Comcast Cable Commc'n., LLC V. OpenTV, Inc.*,
   No.C.A. No. 16-06180 WHA, 2017 WL 3335742 (N.D. Cal Aug. 4, 2017) .........................15

*Contour Holding v. GoPro*,
   C.A. No. 15-1108-LPS, 2017 WL 3189005 (D. Del. July 6, 2017) .............................8, 13, 18

*Genetic Techs. Ltd. v. Natera, Inc.*,
   C.A. No. 12–1737–LPS, 2014 WL 1466471 (D. Del. Apr. 15, 2014) ...................................10

*Edwards v. Arthur Andersen LLP*,
   189 P.3d 285 (Cal. 2008) ...................................................................................................12

*Good Tech. Corp. v. MobileIron, Inc.*,
   C.A. No. 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015) ...........................13

*In re Acer Am. Corp.*,
   626 F.3d 1252 (Fed. Cir. 2010).................................................................................. 10-11, 13

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).....................................................................................13, 14

*In re Hoffmann–La Roche*,
   587 F.3d 1333 (Fed. Cir. 2009)...........................................................................................17

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011)............................................................................8, 9, 14, 18

*Intellectual Ventures v. Checkpoint Software*,
   797 F. Supp. 2d 472 (D.Del. 2011)......................................................................................17

*Ithaca Ventures K.S. v. Nintendo of Am. Inc.*,
   C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014)..............................10, 12

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 8733 (3d Cir. 1995)............................................................................. *passim*

*L'Athene, Inc. v. EarthSpring LLC*,
   570 F. Supp. 2d 588 (D. Del. 2008).....................................................................................12

*McRo, Inc.v. Activision*,
   C.A. No. 12-1508, 2013 WL 6571618 (D. Del. Dec. 13, 2013).............................................17

*MEC Resources, LLC v. Apple, Inc.*,
   C.A. No. 17-0223-MAK, 2017 WL 4102450 (D. Del. Sept. 15, 2017) .................................15

*Nalco Co. v. AP Tech Grp. Inc.*,
  C.A. No. 13–1063–LPS, 2014 WL 3909114 (D. Del. Aug. 8, 2014).....................................10

*Papst Licensing v. Lattice Semiconductor*,
  126 F. Supp. 3d 430 (D. Del. 2015).................................................................................10, 11

*QinetiQ Ltd. v. Oclaro, Inc.*,
  C.A. No. 09-372-JAP, 2009 WL 5173705 (D. Del. Dec. 18, 2009)....................................8, 9

*Shutte v. Armco Steel Corp.*,
  431 F.2d 22 (3d Cir. 1995)..........................................................................................................7

*T.C. Heartland v. Kraft Foods Group Brands LLC*,
  137 S.Ct. 1514 (2017).................................................................................................................7

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
  676 F. Supp. 2d 321 (D. Del. 2009)............................................................................................7

*Wacoh Co. v. Kionix, Inc.*,
  845 F. Supp. 2d 597 (D. Del. 2012).....................................................................................8, 13

## STATUTES & RULES

28 U.S.C. § 1400(b) ........................................................................................................................7

28 U.S.C. § 1404(a) .....................................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6)...............................................................................................................15

Fed. R. Civ. P. 45 .........................................................................................................................13

## I.  NATURE AND STAGE OF PROCEEDINGS

This case commenced on August 1, 2017, when Genedics, LLC filed its Complaint against Meta Company alleging infringement of six patents: U.S. Patent Nos. 8,319,773; 8,477,098; 8,730,165; 8,902,225; 9,110,563; and 9,335,890 (collectively, the "Patents-In-Suit"). On August 18, 2017, this Court approved the Parties' stipulation that extended the deadline for Meta to answer or otherwise respond to the Complaint to September 28, 2017.

## II.  SUMMARY OF ARGUMENT

1.    Applying the well-established factors from *Jumara v. State Farm Ins. Co.*, 55 F.3d 8733 (3d Cir. 1995), the Court should transfer this case to the U.S. District Court for the Northern District of California.  As evidenced below, nearly all the private and public *Jumara* factors favor transfer in this case, and counterbalance Genedics' transparent choice to file this lawsuit in an inconvenient forum – a tactic that appears to be designed to burden Meta with unnecessary litigation expenses and limit Meta's ability to defend itself against the frivolous claims brought in this action.

2.    Meta is a small company presently headquartered in San Mateo, California. At all times relevant to the allegations in the Complaint, Meta's primary and only place of business has been in the Northern District of California, where it developed the Meta 1 and Meta 2 Development Kits – the products that are the target of Genedics' baseless infringement allegations.  Nearly all the evidence in this case is located in the Northern District of California. For example, all of the Meta engineers who developed the accused technology, and at least one third-party witness relevant to this case, are located in the Northern District of California.

3.    Moreover, Meta is a pre-profit start-up company that relies on funding obtained from investors to function; the costs of maintaining local counsel and flying its employees to

1

Delaware would severely impact Meta's bottom line, and would be prejudicial to Meta, which intends to vigorously defend the novelty and inventiveness of its technologies against Genedics' infringement claims.

4.      In contrast, Genedics is a non-Delaware entity created solely to monetize patents covering technology in which it has no bona fide technical expertise, nor practicing products. Genedics is a Massachusetts limited-liability company founded by two of the four named inventors listed on the Patents-In-Suit, with identified places of business in both California and Massachusetts.  Additionally, according to U.S. Patent and Trademark Office records, both Gene Fein and Jackson Fein – two of the four named inventors – are California residents, having maintained residences in Westlake Village and Oxnard.  Genedics has not alleged any presence in Delaware, nor does a search of public records indicate that Genedics has any business, sales or other bona fide presence in Delaware.

5.      Given these facts, the private and public *Jumara* factors support transfer of this case to the Northern District of California for the convenience of the parties, and in the interests of justice.  Delaware is an inconvenient forum for nearly all parties and witnesses involved in this matter, particularly for Meta, which is a start-up with limited funding and limited product sales. Indeed, the only true tie to the State of Delaware in this case is the fact that Meta is incorporated in Delaware; as such, the Court should defer to Meta's expressed preference to defend against this suit in the Northern District of California, and should transfer the case accordingly.

### III.   STATEMENT OF FACTS

####   A.   Meta is a Start-Up Company Headquartered In San Mateo, California with Limited Resources.

Meta is a pioneering start-up company founded in 2012 that produces augmented reality hardware and software products.  Exs. 1, 2.  At all times relevant to the allegations in the Complaint, Meta's corporate headquarters have been located in the Northern District of California; at present, Meta's offices are located in San Mateo, California.  Declaration of Karen Kwan in Support of Defendant Meta Company's Motion To Transfer ("Kwan Decl.") ¶ 2.  Meta's team of engineers have exclusively developed Meta's augmented reality head mounted displays, the Meta 1 Development Kit, and its successor, the Meta 2 Development Kit, at Meta's various corporate headquarters in the Northern District of California.  *Id*. ¶ 5.



The Meta 1 Development Kit



The Meta 2 Development Kit

Although Meta is incorporated in Delaware, it has no physical presence in Delaware. Kwan Decl. ¶ 3.  At present, the scientists and engineers who developed the accused the Meta 1 and Meta 2 Development Kits work at Meta's San Mateo headquarters, and all continuing development of Meta's hardware and software is performed in San Mateo County.  *Id.* ¶ 5. Likewise, all documents relating to the design and development of the accused products, as well as sales and marketing materials relating thereto, are located in San Mateo, California.  *Id.*

The Meta 1 and Meta 2 Development Kits are experimental products, and their sales are limited.

REDACTED

Because of its limited sales revenue, Meta relies on venture capital investment to fund its operations.  Kwan Decl. ¶ 7.  To date, Meta has raised approximately $73 million in two venture funding rounds, but must use this money to pay its employees and the expenses incurred in

_____

[1] Meta no longer sells the Meta 1 Development Kit.  Kwan Decl. ¶ 6.

developing and commercializing the Meta 1 and Meta 2 Development Kits, along with funding the development of its future products. *Id.* Currently, Meta has approximately 120 full-time employees that this venture funding must support, along with the normal operational costs of running a company. *Id.* ¶¶ 2, 7. If this case were to remain in Delaware, Meta would be subjected to the added expense involved in traveling to the forum (for hearings, ADR and/or trial), and retaining and maintaining local counsel.

## B.   Genedics Has No Presence in Delaware, but Does Have A Presence in California

Genedics is a Massachusetts limited liability company, with its place of business in Lenox, Massachusetts. D.I. 1 ¶ 2. Genedics does not practice the patents at issue in this case; for example, it does not produce any bona fide augmented or virtual reality products. D.I. 1 ¶¶ 8-9. Instead, Genedics' stated corporate purpose is to "engage in and sell intellectual property and to engage in any lawful activity for which a limited liability company may be formed under the laws of Massachusetts." Ex. 3. Genedics' managers are Edward Merritt and Eugene Fein, who are two of the four named inventors of the Patents-In-Suit.

Genedics does not allege that it has any connection with Delaware, and Delaware corporate records reinforce that Genedics has no corporate connection to the State of Delaware. Ex. 4.

By contrast, Genedics' business presence and operations are intimately connected to the State of California. For example, PTO assignment records establish that Genedics also has "a usual place of business at 2625 Marvella Court, Camarillo, CA 93012." Exs. 5-10. Camarillo is located in Ventura County, in California.

The six Patents-in-Suit identify four named inventors: Gene Fein, Jackson Fein, Edward Merritt, and Eli Merritt. D.I. 1, Exs. A-F. PTO records indicate that two of the inventors, the

Feins, are residents of California.[2]   Exs. 5-10.   Indeed, the assignments for the Patents-in-Suit,

executed in 2014, indicate that they were signed by the Feins before a notary public in Ventura

County, California.   *Id.*   The assignment documents also indicate that the form of identification

provided by Gene Fein and Jackson Fein was a "California driver's license."   Ex. 5 at frames

0339-0400, Ex. 6 at frames 0401-0402, Ex. 7 at frames 0416-0417, Ex. 8 at frame 0380, Ex. 9 at

frames 0136-0137, and Ex. 10 at frames 0088-0089.   Consistent with this evidence, PTO

application records also indicate that as of October 16, 2012**,** the Feins lived in Ventura county –

in Oxnard or Westlake Village.   Exs. 11-14.   Finally, Gene Fein's Linked-In profile states (a)

that he is located in "Greater Los Angeles Area", (b) that he has extensive professional

experience as a television and music producer in California, and (c) that Genedics is in the

"Santa Rosa Valley, CA."   Ex. 15.   Based upon information and belief, Jackson Fein also

currently resides in the State of California, where he is a student at the University of Southern

California. Ex. 16.

###### C.      Relevant Third Party Witnesses Also Reside In California.

While Genedics' infringement allegations are unclear and inadequately pleaded, they

identify use of third-party software, Unity 3D, as being part of the infringing conduct.   D.I. 1 ¶¶

33, 40, *et al*.   The Unity 3D software is created by Unity Technologies, a third-party entity that is

located in San Francisco, California.   Ex. 17.   Likewise, as noted above, Meta's engineers are

located in the Northern District of California, as are the great majority of Meta's former

employees who may be relevant witnesses to this action.

---

[2] The remaining inventors are not Delaware residents.  Exs. 11-14.

IV.   **ARGUMENT**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The party seeking transfer has the burden of demonstrating that the "balance of convenience of the parties is strongly in favor of defendant."  *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1995).  In *Jumara,* the Third Circuit set forth relevant factors that need to be considered in making this determination.  These include both "private" and "public" factors.

The private interest factors include: (1) the plaintiff's choice of forum as manifested in the original choice; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records.  *Jumara,* 55 F.3d at 879.  The public interest factors include: (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 879-880.

A.   **Genedics could have brought this case in the Northern District of California**

Venue for patent actions is governed by 28 U.S.C. § 1400(b).  *T.C. Heartland v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1520 (2017)**.**  Because Meta's headquarters are in San Mateo, California, it has a regular and established place of business within the Northern District of California. Kwan Decl. ¶ 5.  To the extent understood, the alleged acts of infringement

7

took place at Meta's corporate headquarters.  Thus, venue in the Northern District of California would be proper under *TC Heartland*, and it is a proper transferee venue under 28 U.S.C. § 1404(a).  *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 600 (D. Del. 2012) (observing that transfer is appropriate only to venue where the action could have been originally brought); *QinetiQ Ltd. v. Oclaro, Inc.*, C.A. No. 09-372-JAP, 2009 WL 5173705, at *3 (D. Del. Dec. 18, 2009) (holding that plaintiff could have brought suit in the Northern District of California because Defendant's principal place of business and its design, development and sales activity with respect to the accused products took place in that district).

### B.   The *Jumara* Factors Strongly Favor Transfer to the Northern District of California

Delaware courts regularly transfer patent cases to a more appropriate forum when warranted by the facts in the case.  *Contour Holding v. GoPro*, C.A. No. 15-1108-LPS, 2017 WL 3189005, at *14-15 (D. Del. July 2017); *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 330 (D. Del. 2009); *accord, In re Link_A_Media Devices Corp.,* 662 F.3d 1221 (Fed. Cir. 2011).  The facts in this case, as demonstrated below, clearly warrant transfer to the Northern District of California.  Considering the *Jumara* factors listed above, the balance of factors strongly weigh in favor of transfer to the Northern District of California. Factors (2) through (6), and (8) through (10) weigh strongly in favor of transfer, easily negating the limited deference due to Plaintiff's choice of venue under Factor (1).

1.     **The "private interest" _Jumara_ factors strongly weigh in favor of transfer to the Northern District of California**

   a.     **Factor 1: Genedics' choice of forum should be disregarded because Genedics has no connection to the State of Delaware and because the other _Jumara_ factors weigh strongly in favor of transfer**

As outlined above, neither Genedics nor its key representatives have any bona fide connections to the State of Delaware.  Indeed, Genedics is not a Delaware corporation, nor does it even attempt to allege any presence in Delaware.  D.I. 1 ¶ 2.

Delaware courts have recognized that courts should not defer to a plaintiff's choice to file suit in Delaware when the plaintiff has little of no connection to the State of Delaware, and when the other _Jumara_ factors support transfer.  _Link_A_Media_, 662 F.3d at 1223 ("When a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference."); _see also QinetiQ Ltd._ 2009 WL 5173705, at *3 ("Plaintiff's choice is entitled to less deference" when "the design, development and manufacture of Defendant's [accused] product occurs in [the transferee venue] or overseas.").

Under this well-established law, this Court should assign minimal weight to Genedics' selection of an inconvenient forum, especially in light of the strong showings in favor of transfer to the Northern District of California under the other _Jumara_ factors.

   b.     **Factor 2: Meta's Choice of Forum supports transfer because the majority of relevant witnesses and information are in The Northern District of California**

The second _Jumara_ factor, defendants' choice of forum, supports transfer because the Northern District of California is home to the entirety of Meta's business and operations.  Meta's principal place of business is in the Northern District of California.  Kwan Decl. ¶ 2.  All of Meta's engineers are located in the Northern District of California.  _Id._ ¶¶ 5, 8.  The documentary evidence and source code that describes the accused technology, including information related to

hand-tracking technologies, is located in the Northern District of California. *Id.* ¶ 5; *Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014) (transfer favored when defendant's principal place of business located in the forum proposed by the defendant-movant); *Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) (finding that defendant's principal place of business was located in the Northern District of California, where the majority of its employees work, favored transfer).

Furthermore, two of the four named inventors, including the lead inventor on all of the Patents-in-Suit, are located in California. *See Supra* Section 2.B. The principal place of business of Unity Technologies SF – a third party software vendor whose software products are identified in the Complaint as part of Meta's alleged infringement – is also located in the Northern District of California. Ex. 17.

For these reasons, *Jumara* Factor 2 strongly favors transfer to the Northern District of California.

### c.   Factor 3: Transfer is supported because the underlying dispute arose in the Northern District of California, not in Delaware

Delaware courts have recognized that *Jumara* Factor 3 weighs in favor of transfer to the district court in which the design, production and manufacture of the accused products have taken – or are taking - place. *Papst Licensing v. Lattice Semiconductor*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) (favoring transfer to the district where the production, design and manufacture of the accused instrumentalities occurred); *see also Ithaca Ventures K.S. v. Nintendo of Am. Inc.*, C.A. No. 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014), at *3 ("[This] court has recognized that 'to some extent, infringement claims arise where the allegedly infringing products are designed and manufactured.'"); *see also In re Acer Am. Corp.*, 626 F.3d

1252, 1256 (Fed. Cir. 2010) (concluding that a party's infringement arose where its allegedly infringing activities such as research, design and development decisions occurred).

In this case, the accused products were designed and developed in the Northern District of California, not in Delaware.  Kwan Decl. ¶ 5.  As such, any direct infringement by Meta – to the extent that it exists – takes place in California, not Delaware.

Similarly, the conduct underlying Genedics' claims of induced infringement arise in the Northern District of California.  The marketing and instructional material for the accused technology and related software were developed in the Northern District of California.  Kwan Decl. ¶ 5.  Likewise, the third-party software allegedly involved in infringement, the Unity 3D engine, is produced by a company headquartered in the Northern District of California.  Ex.17.

For the aforementioned reasons, *Jumara* Factor 3 also strongly favors transfer to the Northern District of California.

> **d.** **Factor 4: Transfer to the Northern District of California is more convenient for the Parties**

To determine which forum is more convenient for parties, the court considers "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Papst Licensing*, 126 F. Supp. 3d at 440.

In the present case, Meta is located in San Mateo, California, more than 2000 miles from Delaware.  Kwan Decl. ¶ 2.  This distance creates practical and financial consequences for Meta that would prejudice its ability to vigorously defend against this action.  First, Meta is a start-up that is supported by venture financing, as opposed to product sales.  This has real world consequences.  For example, the engineers familiar with the technology-at-suit are all located in

the Northern District of California. *Id*. ¶ 8. Proceeding in Delaware will saddle Meta with additional costs and expenses, such as for airfare and hotel expenses for counsel, as well as Delaware counsel costs. If the case reaches trial in Delaware, Meta would be forced to spend funds on travel and lodging for employee-witnesses. In addition, this travel would cause a great deal of lost productivity – significant time and money that would not be lost if those witnesses were only forced to take several hours from their work to attend local litigation-related activities. The bottom line is that litigating in Delaware instead of in the Northern District of California will siphon precious resources away from Meta's product and business development activities, and will only serve to hamstring Meta's defense against Genedics' claims. Delaware courts have recognized the strong interest in transfer when such concerns are at play. *See, L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 595 (D. Del. 2008) (granting motion to transfer due to inconvenience posed to defendant, a small company based in Arizona with few employees who would incur significant financial burden if case remained in Delaware)

In contrast, litigating this suit in California would not be inconvenient for Genedics. While Genedics is a Massachusetts LLC, it also has a place of business in California, and two of the inventors are California residents. *See Supra* Section II.B**.** Transferring the case to the Northern District of California will be more convenient for them as well. The cost of litigating in Delaware or California should not make a material difference to Genedics, as it has hired lead counsel from a major law firm in Washington, D.C.; regardless of jurisdiction, Genedics would need to retain local counsel, and its lead counsel would need to travel to California to depose relevant witnesses.

For these reasons, *Jumara* Factor 4 strongly favors transfer to the Northern District of California. *Ithaca Ventures*, 2014 WL 4829027, at *4 ("It is unreasonable to subject all parties

to an inconvenient forum when a forum exists that would significantly reduce the burden of at least one of the parties."); *see also Contour Holding*, 2017 WL 3189005, at *14 (transferring case where the Defendant was incorporated in Delaware but the principal places of business for both the Defendant and the Plaintiff were on the West Coast).

> e.      **Factor 5: This case should be transferred because the Northern District of California is more convenient for witnesses**

The fifth *Jumara* factor takes into account the "convenience of the witnesses," "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora [.]" *Jumara*, 55 F.3d at 879.  "Of particular concern here are fact witnesses who may not appear of their own volition in the venue-at-issue and who could not be compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45." *Good Tech. Corp. v. MobileIron, Inc.*, C.A. No. 14-1308-LPS-CJB, 2015 WL 1458091, at *6 (D. Del. Mar. 27, 2015); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer[.]").

In its Complaint, Genedics alleges that the 3D software engine produced by third-party Unity Technologies is used in conjunction with the Meta Development Kits to directly infringe the Patents-In-Suit.  D.I. 1 ¶¶ 33, 40, 95, 103, 155, 162, 214, 221, 276, 283, 335, 342.  Therefore, engineers involved in the function and operation of Unity's 3D software engine are likely to play a role in this litigation.  Unity Technologies is headquartered in San Francisco, California.  It therefore stands to reason that a critical mass of their engineers and other relevant witnesses are likely located in the San Francisco Bay Area, outside the trial subpoena power of this court, but not outside the subpoena power of the Northern District of California.

Likewise, this Court has recognized that employees are mobile.  *Wacoh,* 845 F. Supp. 2d at 603.  This is particularly true in Silicon Valley, where engineers chase the latest hot start-up or

technological area, and where the strong California legislative and judicial policy in favor of employee mobility is in sway. *See e.g.*, *Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 292 (Cal. 2008) (finding noncompetition agreement signed by employee as invalid because it restrained his ability to practice his profession). Thus, while key engineers may be Meta employees today, there is no guarantee that they will be employees when the time for trial arrives, and this may result in their unavailability for trial in Delaware. Additionally, should this matter remain in Delaware, former Meta employees who may be relevant to the allegations in this case would be outside of the subpoena power of this Court, and may refuse to make themselves available for trial in Delaware.

Similarly, it is not clear that Jackson Fein – who, on information and belief, resides in California – is presently a manager or employee of Genedics. The Massachusetts corporate records do not identify him as such. Ex. 3. Depending on his relationship with Genedics, he may or may not be voluntarily willing to appear at trial.

For these reasons, *Jumara* Factor 5 favors transfer to the Northern District of California.

### f.   **Factor 6: Records and books that are relevant to this case are located in the Northern District of California**

Application of *Jumara* Factor 6 strongly favors transfer to the Northern District of California because all records pertaining to the accused Meta technology in this case are located in San Mateo, including engineering, sales and marketing documents and materials. Kwan Decl. ¶ 5**.** *In re Genentech*, 566 F.3d at 1345; *see In re Link_A_Media*, 662 F.3d at 1224 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.").

2. **Application of the Public *Jumara* factors also favor transfer to the Northern District of California**

    a. **Factor 7: Enforceability of the Judgment is neutral as a judgment in either Delaware or The Northern District of California can be enforced.**

There are no anticipated issues with enforcement of any judgment issued in this case, whether issued by a court in Delaware or the Northern District of California. As such, *Jumara* Factor 7 is neutral.

    b. **Factor 8: Practical considerations that could make the trial easy, expeditions or inexpensive weigh in favor of transfer**

For the reasons outlined above, litigation of this matter would be easier, more expeditious and less expensive if it were to be transferred to the Northern District of California. In addition to the financial benefits identified above, practical case management benefits support transfer to the Northern District of California.

For example, litigating this case in the Northern District of California, which generally allows – and even encourages – early identification and action on case-dispositive matters, would allow this case to be potentially resolved in a more expeditious and cost-effective manner. *Comcast Cable Commc'n., LLC V. OpenTV, Inc.*, C. 16-06180 WHA, 2017 WL 3335742, at *1 (N.D. Cal Aug. 4, 2017) (granting early summary judgment motion of non-infringement in accordance with patent pilot program). In contrast, the availability of early summary judgment is a matter of this Court's discretion, and is limited by this Court's caseload. Should the Court not grant Meta leave to file early summary judgment, Meta will be forced to expend its scarce resources engaging in ultimately unnecessary discovery.

This is not just a hypothetical concern. Concurrently with this Motion, Meta is filing a Rule 12(b)(6) motion to dismiss all claims against it, in part because Genedics' complaint fails to provide a plausible statement of facts supporting the conclusion that Meta practices a claim

limitation found in all asserted claims – "quadrilateral angle navigation."[3]   Should Genedics'

patents survive the motion to dismiss, early claim construction of the term "quadrilateral angle

navigation" could resolve the case quickly.   This is not a term normally used by persons of

ordinary skill in this art.   The patent specification defines a specific arrangement of lasers and

sensors that are used to perform the "quadrilateral angle navigation" in the patent.   Yet these

external laser sensors are indisputably *not used* in the Meta 1 and Meta 2 headsets.   Prompt

resolution of this dispute would save Meta a substantial amount of money, and would avoid

unnecessary litigation and discovery.

For these reasons, *Jumara* Factor 8 favors transfer of this case to the Northern District of

California.

**c.**   **Factor 9: Transfer is warranted due to administrative
difficulties that may hinder in expeditiously bringing the case
to trial in Delaware**

*Jumara* Factor 9 assesses the "relative administrative difficulty in the two fora resulting

from court congestion." *Jumara*, 55 F.3d at 879.   At present, the District of Delaware suffers two

judicial vacancies, which has been considered a fact in favor of transfer to the Northern District

of California.   For example, in *MEC Resources, LLC v. Apple, Inc.*, the Court transferred the

case to the Northern District of California, noting that the transferee district "has a full bench of

talented district judges," while this Court's limited resources are currently taxed by the judicial

vacancies, with judges from other busy districts sitting to help address the docket.   C.A. No. 17-

0223-MAK, 2017 WL 4102450, at *5 (D. Del. Sept. 15, 2017).

---

[3] All of the claims include the term "quadrilateral angle navigation" – a term that appears to have
been coined by the inventors of the Patents-in-Suit.   This term was added during prosecution and
provides the basis for the issuance of all claims.   As explained in Meta's motion to dismiss, the
Complaint does not explain what this is, much less adequately plead facts that present a plausible
case of infringement by Meta's accused products.

Based on these facts and past precedent, application of *Jumara* Factor 9 favors transfer to the Northern District of California.

> d. **Factor 10: Transfer is warranted because the Northern District of California has a strong interest in deciding a controversy that impacts a local company.**

In applying *Jumara* Factor 10, the Federal Circuit has recognized that "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann–La Roche*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). The ruling in *Hoffman-La Roche* is directly applicable to this case. Meta is a California start-up; all the research and development of the accused products occurred in the Northern District of California. Kwan Decl. ¶ 5. The engineers who worked on the related technology are all located in the Northern District of California, as are any relevant former Meta employees. *Id.* ¶ 8. Relevant third-party witness Unity is based in the San Francisco Bay Area, as are its employees. Finally, any direct or indirect infringement by Meta took place in California.

The evidence in this case indicates that the Northern District of California has more of a local interest in this case than Delaware, and thus this factor is favors transfer.

> e. **Factor 11: Public Policy of the fora are neutral;**

As noted above, while Delaware has a strong interest in resolving disputes of businesses incorporated in its district, this is counterbalanced by the fact that Meta and the majority of witnesses are headquartered in the Northern District of California. *McRo, Inc. v. Activision*, C.A. No. 12-1508, 2013 WL 6571618 at *12 (D. Del. Dec. 13, 2013); *Intellectual Ventures v. Checkpoint Software*, 797 F. Supp. 2d 472, 486 (D. Del. 2011).

Although Meta has chosen Delaware as its state of incorporation, courts have recognized that entities incorporated in Delaware have the freedom to decline the benefit of litigating in a Delaware jurisdiction, should their recognized and legitimate interests advise doing so. *Contour Holding*, 2017 WL 3189005, at \*14 (Defendants' status as a Delaware corporation "should have little bearing on this factor" where it is seeking transfer to a more convenient jurisdiction; *see also In re Link_A_Media*, 662 F.3d at 1224 (place of incorporation "should not be dispositive of the public interest analysis.").

Because both the Northern District of California and the District of Delaware are familiar with patent law, and because neither forum has special policies that would cause it to be favored, *Jumara* Factor 11 therefore is neutral.

### f.    Factor 12 does not apply as this is not a diversity case

The last *Jumara* factor is inapplicable to this matter, as this is not a diversity case.

## V.    CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court transfer this action to the Northern District of California.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Michael C. Ting
Craig Kaufman
Fatima Alloo
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood City, CA  94612
Tel:  (650) 517-5200

Dated:  September 28, 2017
5416363 / 44402
Public Version Dated: October 5, 2017

By:  */s/ Stephanie E. O'Byrne*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
obyrne@potteranderson.com

*Attorneys for Defendant Meta Company*