**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

GENEDICS, LLC,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　Civil Action No. 17-1062-CJB
　　　　　　　　　　　　　　　　　　)
META COMPANY,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

## MEMORANDUM ORDER

Presently before the Court is Plaintiff Genedics, LLC's ("Genedics" or "Plaintiff")

Motion for Judgment Upon Default and Injunctive Relief (the "Motion"). (D.I. 55) With its

Motion and a related proposed order, Genedics seeks, *inter alia*, to bar Defendant Meta

Company ("Meta" or "Defendant") and Meta executives Meron Gribetz and John Sines from

further infringing United States Patent Nos. 8,319,773; 8,477,098; 8,730,165; 8,902,225;

9,110,563; and 9,335,890 (the "patents-in-suit") and to preclude them (a) from manufacturing,

importing, offering to sell, selling, or using within the United States, either alone or with others

in active concert or participation with any of them, systems containing Meta 1 or Meta 2

headsets and any associated software, or any colorable variation thereof, or (b) from inducing or

contributing to the manufacturing, importing, offering to sell, selling, or using within the United

States, either alone or with others in active concert or participation with any of them, systems

containing Meta 1 or Meta 2 headsets (and any associated software) or any colorable variation

thereof. (D.I. 63) For the reasons set out below, the Court GRANTS this portion of Plaintiff's

Motion.

## I.　　BACKGROUND

## A.     Factual Background

Plaintiff is a limited liability company organized under the laws of Massachusetts. (D.I.

1 at ¶ 2)  It has its principal place of business in Lenox, Massachusetts.  (*Id.*)  Defendant is a

Delaware corporation and its principal place of business is located in San Mateo, California.  (*Id.*

at ¶ 3)  Defendant was created in 2012 and is a maker of augmented reality hardware and

software products. (D.I. 1 at ¶ 10; D.I. 57, ex. B)  Meron Gribetz is Defendant's Chief Executive

Officer and Founder, (D.I. 57, ex. E), while John Sines serves as Defendant's Chief Financial

Officer, (D.I. 53).

Plaintiff accuses Defendant of directly and indirectly infringing the six patents-in-suit,

*inter alia*, by making, selling, offering to sell, using, and/or importing the Meta 1 development

kit ("Meta 1") and the Meta 2 development kit ("Meta 2," and collectively with Meta 1, the

"accused products"). (D.I. 1 at ¶¶ 10, 23-383)  The accused products are augmented reality head

mounted displays that are employed in computer user interface systems.  (*Id.* at ¶¶ 10, 33)  In its

Complaint, Plaintiff requested, *inter alia*, permanent injunctive relief.  (*Id.* at 69)

Both parties participated in the early stages of the litigation process, including through

the duration of a motion to dismiss, (D.I. 11), and a motion to transfer, (D.I. 13), both filed by

Defendant.[1]  However, on November 2, 2018, Defendant's counsel filed a motion to withdraw.

(D.I. 43)  In a November 8, 2018 Order, the Court granted the motion to withdraw and stayed the

case; since this left Defendant unrepresented, the Court also ordered that within 30 days of the

Order, Defendant should retain counsel and have counsel enter an appearance.

---

[1]     The motion to transfer and the motion to dismiss were later denied. (D.I. 27; D.I. 34)

Thereafter, in a January 9, 2019 joint status report letter to the Court, Mr. Sines stated that Defendant's "lender exercised its remedies as first priority secured lender and foreclosed and sold all assets to a third party in a UCC foreclosure sale at a value below the outstanding loan amount," leaving Defendant "insolvent." (D.I. 47 at 1)  He further explained that "Meta does not have the resources to retain legal counsel or to provide a settlement offer." (*Id.*)

On January 10, 2019, the Court entered a further Order in which it: (1) noted that, under the law, Defendant could not participate in this litigation without counsel; (2) ordered that Defendant obtain counsel by January 24, 2019; and (3) stated that if Defendant did not obtain counsel by that date, Defendant's Answer would be deemed stricken and a default would be entered against Defendant. (D.I. 48 at 2)  After Defendant did not obtain counsel by this deadline, on January 29, 2019, the Court ordered Defendant's Answer stricken and ordered the Clerk of Court to enter default against Defendant. (D.I. 51)  Entry of default was entered that same day.

On February 19, 2019, Mr. Sines filed a letter on Defendant's behalf, requesting that the Court vacate the default. (D.I. 53)  The letter stated that as of late January 2019, "Meta's assets were in the process of being sold" and "the company was initiating its dissolution process and was therefore unable to retain counsel." (*Id.*)  However, Mr. Sines wrote that as of the date of the letter, Defendant expected that "[w]ithin the next 45 days, [it] will have the resources" to obtain counsel "and it is extremely important for us to defend against what we consider to be a completely unjustified claim against us." (*Id.*)  Because Defendant was a corporation that was not then represented by counsel, the Court noted that it could not consider this letter. (March 12, 2019 Docket Entry)  The Court further explained that to the extent that Defendant had counsel enter an appearance while the case was still pending, and to the extent that such counsel then

moved for relief on behalf of Defendant, the Court would consider any such request at that time. (*Id.*)

In an April 1, 2019 e-mail exchange between the parties, Plaintiff's counsel asked Mr. Sines, *inter alia*, if Defendant had any interest in settling this litigation. (D.I. 57, ex. D at 1) In response, Mr. Sines indicated that Defendant did not wish to make a settlement offer and added that Defendant "is no longer selling the Meta[]2 and does not have any remaining assets, including inventory of units." (*Id.*) The next day, in a follow-up e-mail, Mr. Sines confirmed that Defendant "[did] not have a settlement offer and [was] without legal representation due to our lack of funds." (*Id.* at 2)

To date, Defendant has not retained counsel.

### B.    Procedural Background

Plaintiff filed its Complaint on August 1, 2017. (D.I. 1) The parties thereafter jointly consented to the Court's jurisdiction to conduct all proceedings in the case, including trial, the entry of final judgment, and all post-trial proceedings. (D.I. 10)

On April 4, 2019, Plaintiff filed the instant Motion, moving for entry of default judgment and for permanent injunctive relief against Defendant, pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Rule 7.1. (D.I. 55) Plaintiff filed its opening brief on the same date. (D.I. 56) Defendant did not file any briefing. Therefore, briefing on the instant Motion was complete as of April 4, 2019. (*Id.*)

On June 19, 2019, the Court entered an Order granting the Motion to the extent that it sought entry of default judgment, finding Defendant liable on all Counts of the Complaint. (D.I. 60) However, the Court noted that it was uncertain as to whether the record was sufficient for it to grant Plaintiff's request for permanent injunctive relief, since: (1) that issue was only

addressed in a cursory manner in Plaintiff's briefing; and (2) certain relevant portions of the record were "uncertain." (*Id.*) The Court thus ordered a hearing with regard to Plaintiff's request for a permanent injunction. (*Id.*)

That hearing was held on July 26, 2019. Defendant did not attend or have counsel participate in the hearing on its behalf. Plaintiff was represented by counsel at the hearing and, after the hearing, Plaintiff filed a revised proposed order for permanent injunctive relief. (D.I. 63; D.I. 64)

## II.  STANDARD OF REVIEW

A district court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. "The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008). "Permanent injunctions in patent cases must be based on a case-by-case assessment of the traditional equitable factors governing injunctions." *IGT v. Bally Gaming Int'l Inc.*, 675 F. Supp. 2d 487, 488 (D. Del. 2009). In order to prevail on its request for a permanent injunction, a plaintiff must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and . . . such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* at 394.

"A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (internal quotation marks and citation omitted); *see Innovative Office Prods., Inc. v. Amazon.com, Inc.*, Civil Action No. 10-4487, 2012 WL 1466512, at *4 (E.D. Pa. Apr. 26, 2012); *Tristrata Tech., Inc. v. Cardinal Health, Inc.*, No. 02-1290 JJF, 2004 WL 2223071, at *1 (D. Del. Sept. 30, 2004). Thus, in a patent infringement case like this one, the Court here must presume that Defendant has infringed Plaintiff's patents, as was alleged in Plaintiff's Complaint. *See Innovelis, Inc. v. Auch*, CIVIL ACTION NO. 15-02661, 2016 WL 2910076, at *2 (E.D. Pa. May 19, 2016); *Tristrata Tech.*, 2004 WL 2223071, at *1.

## III.  DISCUSSION

Below, the Court will address each of the permanent injunction factors in assessing Plaintiff's request for injunctive relief.

### A.  Factors One and Two:  Irreparable Harm and Inadequacy of Monetary Damages

The first two factors are related here.  Plaintiff asserts that in the absence of an injunction it will suffer irreparable harm because Defendant has claimed to be insolvent, and thus Defendant will be unable to satisfy a judgment secured against it.  (D.I. 56 at 7)

The record on this question is not very robust, due to Defendant's lack of participation in this litigation.  However, that record does reflect that Defendant, since early 2019, has consistently:  (1) held itself out to be insolvent; and (2) claimed to lack the funds to obtain counsel.  For example, in the parties' January 9, 2019 status report, Defendant asserted that its lender had foreclosed and had sold all of Defendant's assets for a value below the outstanding loan amount, leaving Defendant "insolvent."  (D.I. 47)  Then, in its February 2019 letter to the

Court, Defendant again indicated that its assets had recently been sold. (D.I. 53) Additionally, in the above-referenced April 2019 e-mail exchange between the parties, Defendant expressed that it did not have any remaining assets and could not obtain counsel "due to our lack of funds." (D.I. 57, ex. D at 1-2) And despite repeatedly being threatened with the prospect of default and the entry of a default judgment if it did not retain counsel to represent it in this case, Defendant has not done so. All of these facts suggest that Defendant is insolvent and has been for some time; thus, "the questionable financial condition of [Defendant] reinforces the inadequacy of a remedy at law." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) (noting that plaintiff's evidence of defendant's "inability to pay [was] not overwhelming— gleaned as it had to be from public records in light of [defendant]'s failure to introduce any rebuttal evidence or to even argue" that its financial state was otherwise—but still concluding that "this factor favors a finding of irreparable harm" and that these facts also helped demonstrate that monetary damages would be inadequate).

Granted, there have been occasional hints in the record that Defendant may not, in fact, have been without funds during at least some portion of this calendar year. (*See* D.I. 57, ex. D at 3 (March 15, 2019 e-mail from Mr. Sines to Plaintiff's counsel stating that Defendant was "in the process of engaging an attorney to present [their] motion"); *see also id.*, ex. B (January 11, 2019 article stating that Defendant "remains in full operation and continues to develop, sell and support its products")) But in light of Defendant's repeated assertions to the Court that it lacks any funds or assets, and in light of Defendant's inability in recent months to engage counsel to defend this suit, the record sufficiently demonstrates that Plaintiff would not likely be made whole with a monetary award.

Further, the record provides some cause for concern that, without entry of a permanent injunction, Defendant and/or its executives, Mr. Gribetz and Mr. Sines, might continue to infringe Plaintiff's patents in the future. For example, while Defendant was arguing to the Court and to Plaintiff earlier this year that all of its assets were sold and that the company was insolvent, the media noticed that Defendant was exhibiting and promoting one of the accused products at a conference in Texas. (*Id.*, ex. C (news article stating that Defendant operated a booth at a February 2019 conference in which it "featured a full display setup that allowed users to sample how the Meta 2 headset works")) And it appears that a new company (Meta View) has spun off from Defendant and had purchased Defendant's assets. (*Id.*) Under Federal Rule of Civil Procedure 65, the Court may grant a permanent injunction against the parties and its "officers, agents, servants, employees, and attorneys[.]" Fed. R. Civ. P 65(d); *see, e.g. Vanda Pharm. Inc. v. Roxane Labs., Inc.*, 203 F. Supp. 3d 412, 436 (D. Del. 2016), *aff'd sub nom. Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 551 (D. Del. 2005). The above facts suggest that such an injunction is warranted here.

For the reasons set out above, these first two factors turn in Plaintiff's favor.

**B.    Factor Three:  Balance of Hardships**

"This factor assesses the relative effect of granting or denying an injunction on the parties." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015) (internal quotation marks and citation omitted). Plaintiff avers that the balance of hardships factor tips in its favor because Defendant's "flagrant disregard for patent law will undermine Plaintiff's exclusive right to the Patents-in-Suit." (D.I. 56 at 7) If Defendant or its executives are somehow still selling or offering for sale the accused products, that would certainly create a hardship for

Plaintiff. Conversely, if Defendant's prior representations to the Court can be believed, a permanent injunction should not create a hardship on Defendant because Defendant is insolvent and its assets (including the accused products) were sold.

For the above reasons, this factor falls in Plaintiff's favor.

### C.     Factor Four:  Public Interest

"The fourth [permanent injunction] factor requires the patentee to show that the public interest would not be disserved by a permanent injunction." *Apple Inc.*, 809 F.3d at 646 (internal quotation marks and citation omitted). "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors[.]" *Id.* at 647 (noting that its conclusion was based "not only on the Patent Act's statutory right to exclude, which derives from the Constitution, but also on the importance of the patent system in encouraging innovation" and explaining that "[i]njunctions are vital to this system"); *see Custom Designs of Nashville, Inc. v. Alsa Corp.*, 727 F. Supp. 2d 719, 727 (M.D. Tenn. 2010) ("A number of cases indicate that the denial of an injunction for reasons of public interest is limited to cases where public health or safety are threatened, but that in general, the benefits derived from protecting a person's patent sufficiently serve the public interest."). Plaintiff contends that "the public interest will not be disserved by a permanent injunction because consumer need for user interfaces can be met by at least one other manufacturer who has complied with [Plaintiff]'s license requirements." (D.I. 56 at 7) And the Court agrees. The permanent injunction will only enforce the patentee's rights with regard to excluding Defendant and its officers from infringing the patent-in-suit. It would not result in depriving the public of the patented invention(s).

Therefore, this fourth factor also favors Plaintiff.

### IV.    CONCLUSION

As all four permanent injunction factors favor Plaintiff's Motion, the Court GRANTS the Motion as to its request for a permanent injunction.

Plaintiff's counsel shall forward a copy of this Memorandum Order and the related signed Order regarding injunctive relief to Defendant no later than three days from today's date.

Dated: August 13, 2019

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE